Marc Zemel
Evelyn Mailander
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PUGET SOUNDKEEPER ALLIANCE, )
 )
   Plaintiff, )
v. )
 ) COMPLAINT
REPUBLIC SERVICES, INC., )
REGIONAL DISPOSAL COMPANY, )
RABANCO, LTD., and WJR )
ENVIRONMENTAL, INC., )
 )
   Defendants. )
_____

## I. INTRODUCTION

1. This action is a citizen suit brought under Section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff, Puget Soundkeeper Alliance ("Soundkeeper"), seeks declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witnesses' fees, for Defendants Republic Services, Inc., Regional Disposal Company, Rabanco, Ltd., and WJR Environmental, Inc.'s (collectively, "Regional Disposal Co.") repeated and ongoing violations of the terms and conditions of its National Pollutant Discharge Elimination System ("NPDES") permit

COMPLAINT - 1

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

authorizing certain stormwater discharges of pollutants from Regional Disposal Co.'s facility in Everett, Washington to navigable waters.

## II.    JURISDICTION AND VENUE

2.    The Court has subject matter jurisdiction over Soundkeeper's claims under Section 505(a) of the CWA, 33 U.S.C. § 1365(a). Sections 309(d) and 505(a) and (d) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a) and (d), authorize the relief Soundkeeper requests.

3.    Under Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Soundkeeper notified Regional Disposal Co. of its violations of the CWA and of Soundkeeper's intent to sue under the CWA by letter dated and postmarked May 26, 2026 ("Notice Letter"). A copy of the Notice Letter is attached to this complaint as Exhibit 1. The allegations in the Notice Letter are incorporated herein by this reference. In accordance with Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1), Soundkeeper notified the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, and the Director of the Washington Department of Ecology ("Ecology") of its intent to sue Regional Disposal Co. by mailing copies of the Notice Letter to these individuals on May 26, 2026.

4.    At the time of the filing of this Complaint, more than sixty days have passed since the Notice Letter and copies thereof were issued in the manner described in the preceding paragraph.

5.    The violations complained of in the Notice Letter are continuing and/or are reasonably likely to re-occur.

COMPLAINT - 2

6. At the time of the filing of this Complaint, neither the EPA nor Ecology has commenced any action constituting diligent prosecution to redress the violations alleged in the Notice Letter.

7. The source of the violations complained of is in Snohomish County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington under Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b).

## III. PARTIES

8. Soundkeeper is suing on behalf of itself and its members.

9. Soundkeeper is a non-profit corporation organized under the laws of the state of Washington. Soundkeeper is dedicated to protecting and preserving the environment of Washington State, especially the quality of its waters. Soundkeeper is a membership organization and has at least one member who is injured by Regional Disposal Co.'s violations.

10. Soundkeeper has representational standing to bring this action. Soundkeeper's members are reasonably concerned about the effects of discharges of pollutants, including stormwater from Regional Disposal Co.'s facility, on water quality and aquatic species and wildlife that Soundkeeper's members observe, study, use, and enjoy. Soundkeeper's members are further concerned about the effects of discharges from Regional Disposal Co.'s facility on human health. In addition, discharges from Regional Disposal Co.'s facility lessen Soundkeeper's members' aesthetic enjoyment of nearby areas. Soundkeeper has members who live, work, swim, and recreate around or use the Snohomish River, Port Gardner, and the Inner Everett Harbor which are affected by Regional Disposal Co.'s discharges. Soundkeeper's members' concerns about the effects of Regional Disposal Co.'s discharges are aggravated by

COMPLAINT - 3

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Regional Disposal Co.'s failure to record and timely report information about its discharges and pollution controls in a timely manner. The recreational, scientific, economic, aesthetic, and/or health interests of Soundkeeper and its members have been, are being, and will be adversely affected by Regional Disposal Co.'s violations of the CWA. The relief sought in this lawsuit can redress the injuries to these interests.

11.    For example, one member of Soundkeeper lives approximately eleven miles south of Port Gardner and has resided in unincorporated Snohomish County for twenty-five years. This member was an instructor and the Chair of the Department of Anthropology at Edmonds College in Lynnwood, Washington for twenty years, where they founded the Learn and Serve Environmental Anthropology Field School (LEAF) to teach their students about people, plants, and animals. This member first volunteered with Soundkeeper in 2007 as part of a Citizen Volunteer Training at the Port of Everett. From 2009 through their retirement, this member has brought groups of their college students to participate in kayak cleanups with Puget Soundkeeper every summer. This member has also taken weekly walks on the Mill Town Trail, which runs along the Everett waterfront, including along Port Gardner, for the past twenty years. During these walks, this member enjoys watching birds, marine mammals, and salmon in the harbor, and tracking wildlife in the area. This member plans to continue taking these weekly walks for the foreseeable future. This member is aware that Regional Disposal Co. discharges elevated levels of zinc, turbidity, and copper to the Snohomish River and Inner Everett Harbor and Port Gardner on a regular basis with its stormwater and violates its permit. This member reasonably worries about the adverse impacts of Regional Disposal Co.'s discharges and violations on the people, fish, and wildlife that use the harbor, and they feel deeply concerned.

COMPLAINT - 4

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

12. From 2016 through June 2026, this member has also worked with the Snohomish County Conservation District and the City of Everett to reduce pollutant loading to the Everett Harbor by installing rain gardens to filter out pollutants, including through publishing an ethnographic study relied on by the Conservation District. Additionally, this member goes to Jetty Island approximately once per month in the summer months for the past 20 years to hike, track wildlife, birdwatch, wade, and kayak. When this member kayaks around Jetty Island and through Port Gardner, they are aware of and concerned that pollutants may be in the water, and they take additional care to properly wash off their gear afterwards. This member is reasonably concerned that pollutants from facilities like Regional Disposal Co. negatively impact their health and the health of the Inner Everett Harbor ecosystem. However, they plan to continue recreating on and around Jetty Island once per month in the summer for the foreseeable future. This member and their family have also participated in restoration projects on the Union Slough, and this member regularly kayaks around Spencer Island in the Snohomish River, and plans to continue doing so for the foreseeable future. This member also partners closely with local Tribes on scientific surveys and stream restoration projects in the Everett Harbor watershed, participates in canoe journeys with Tribal members through the Port Gardner area, and occasionally purchases local fish for consumption from local Tribes. This member reasonably worries that industrial sources of pollution, especially heavy metals, from facilities like Regional Disposal Co. impact the health of the fish they consume, and in turn puts their own health at risk, and therefore limits their local fish consumption. For this member, it is deeply important to practice place-based gratitude that they have learned from Native elders, including by acknowledging and expressing thanks for salmon, waterways, and the salmon people every time they pass by the Inner Everett Harbor and Port Gardner, which they do several times per week. This member

COMPLAINT - 5

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

reasonably worries that Regional Disposal Co., which continues to discharge pollutants to the Snohomish River, threatens the long-term health of the Snohomish River and Inner Everett Harbor ecosystems and undermines the restoration efforts undertaken by them, their students, their community, and Tribal partners.

13. Defendant Republic Services, Inc. is a corporation headquartered in Arizona and incorporated in Delaware.

14. Defendant Regional Disposal Company is a Washington general partnership comprised of defendants Rabanco, Ltd. and WJR Environmental, Inc.

15. Defendant Rabanco, Ltd. is a corporation authorized to conduct business under the laws of the state of Washington.

16. Defendant WJR Environmental, Inc. is a corporation authorized to conduct business under the laws of the state of Washington.

17. Regional Disposal Co. operates an intermodal waste transfer facility located at or about 905 Riverside Road, Everett, WA 98201, Snohomish County Parcel No. 29051600200100 (referred to herein as the "facility").[1]

## IV.    LEGAL BACKGROUND

18. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA. A discharge of a pollutant from a point source to waters of the United States without authorization by a NPDES permit, issued under Section 402 of the CWA, 33 U.S.C. § 1342, is prohibited.

---

[1] Publicly available documents also list the address for the facility as 950 Riverside Road. Soundkeeper has been unable to identify which of these street addresses is correct and has included the Snohomish County parcel number for the facility for clarity.

COMPLAINT - 6

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

19.     The state of Washington has established a federally approved state NPDES program administered by Ecology. Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-220. This program was approved by the Administrator of the EPA pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

20.     Under Section 402 of the CWA, 33 U.S.C. § 1342, Ecology has repeatedly issued iterations of the Industrial Stormwater General Permit, most recently on December 2, 2024, effective January 1, 2025, and set to expire December 31, 2029 (the "2025 ISGP"). The previous permit was issued on November 20, 2019, effective January 1, 2020, and expired December 31, 2024 (the "2020 ISGP"). The 2020 ISGP and 2025 ISGP (collectively, "the Permit"), contain substantially similar requirements and authorize those that obtain coverage thereunder to discharge stormwater associated with industrial activity, a pollutant under the CWA, and other pollutants contained in the stormwater to waters of the United States subject to certain terms and conditions.

21.     The Permit imposes certain terms and conditions on those covered thereby, including requirements for monitoring and sampling of discharges, reporting and recordkeeping requirements, and restrictions on the quality of stormwater discharges. To reduce and eliminate pollutants in stormwater discharges, the Permit requires, among other things, that permittees develop and implement best management practices ("BMPs") and a Stormwater Pollution Prevention Plan ("SWPPP"), and apply all known and reasonable methods of prevention, control, and treatment ("AKART") to discharges. The specific terms and conditions of the Permit are described in detail in the Notice Letter, attached hereto as Exhibit 1 and incorporated herein by this reference.

COMPLAINT - 7

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

## V.    FACTS

22.    Ecology granted Regional Disposal Co. coverage for the facility under the 2020 ISGP under Permit number WAR124604. Regional Disposal Co. was granted coverage under the 2025 ISGP under the same Permit number, WAR124604

23.    Regional Disposal Co. discharges stormwater and pollutants associated with industrial activity to the Snohomish River, which flows to the Inner Everett Harbor and Port Gardner.

24.    Regional Disposal Co.'s facility is engaged in industrial activities and is approximately 15.77 acres. Regional Disposal Co.'s facility has at least five distinct points of discharge where stormwater and other pollutants leave the facility and eventually enter the Snohomish River, including Outfall D01, as well as two locations where runoff discharges down driveways, runoff from the south corner of the facility, and discharges from rail lines used by the facility.

25.    Regional Disposal Co. has violated and continues to violate "effluent standards or limitations," as defined by 33 U.S.C. §1365(f), including conditions of the Permit. *See* 33 U.S.C. §§ 1311(a) and 1342. Regional Disposal Co.'s violations of the Permit and the CWA are set forth in Sections I through VIII of the Notice Letter attached hereto as Exhibit 1 and are incorporated herein by this reference, with the exception of Section II, paragraphs 3, 5, and 9. In particular, and among the other violations described in the Notice Letter, Regional Disposal Co. has violated the Permit by violating water quality standards, violating AKART standards, failing to prepare and implement an adequate SWPPP, failing to implement BMPs to control water quality, failing to collect quarterly samples as required, failing to timely submit Discharge Monitoring Reports ("DMRs"), failing to comply with visual monitoring requirements, failing to implement

COMPLAINT - 8

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

corrective actions, violating annual reporting requirements, failing to record information, failing to retain records, failing to report Permit violations, and failing to provide Soundkeeper with a copy of its SWPPP.

26.     Regional Disposal Co. discharges stormwater from the facility containing levels of pollutants that exceed the benchmark values established by the Permit, including the days on which Regional Disposal Co. collected samples with the results identified in Table 1, below, and is likely to continue discharging comparably unacceptable levels of pollutants in its stormwater:

**Table 1: Monitoring Point D01* Benchmark Exceedances**

| Quarter in which sample collected | Copper Concentration (Benchmark 14 μg/L) | Zinc Concentration (Benchmark 117 μg/L) | Turbidity Concentration (Benchmark 25 NTU) |
|---|---|---|---|
| 3rd Quarter 2020 | | 140 μg/L | 556 NTU |
| 4th Quarter 2020 | | 220 | 343 |
| 2nd Quarter 2021 | | 130 | 102.1 |
| 1st Quarter  2022 | | | 202 |
| 2nd Quarter 2022 | 37 μg/L | 290 | 999 |
| 4th Quarter 2022 | 41 | 610 | 549 |
| 1st Quarter 2023 | | | 49.6 |
| 2nd Quarter 2023 | 36 | 460 | 999 |
| 3rd Quarter 2023 | 18 | 360 | 510 |
| 1st Quarter 2024 | | | 33.4 |
| 3rd Quarter 2024 | | | 95 |
| 1st Quarter 2025 | 39 | 230 | > 999 |
| 4th Quarter 2025 | 50 | 370 | 598 |
| 1st Quarter 2026 | | | 188 |

*D01 is a monitoring point designation known and used by Regional Disposal Co.

27.     Regional Disposal Co. attests that the stormwater samples identified in Table 1 are representative of and accurately characterize the quality of stormwater discharges generated by Regional Disposal Co.'s facility during the associated calendar quarters. The stormwater

COMPLAINT - 9

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

monitoring data provided in Table 1 shows benchmark exceedances included in the stormwater monitoring results that Regional Disposal Co. submitted to Ecology.

28.    Regional Disposal Co.'s stormwater discharges are causing or contributing to violations of water quality standards and therefore violate Condition S10.A of the Permit. Discharges from Regional Disposal Co.'s facility contribute to the polluted conditions of the waters of the state, including the water quality standards of the Snohomish River, Inner Everett Harbor, and Port Gardner. Discharges from Regional Disposal Co.'s facility contribute to the ecological impacts that result from the pollution of these waters and to Soundkeeper and its members' injuries resulting therefrom. These requirements and Regional Disposal Co.'s violations thereof are described in detail in Section I.A of the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference.

29.    Regional Disposal Co.'s exceedances of the benchmark values indicate that Regional Disposal Co. is failing to apply AKART to its discharges and is failing to implement an adequate SWPPP and BMPs. Regional Disposal Co. violated and continues to violate Conditions S10 and S3 of the Permit by not developing, modifying, and/or implementing BMPs in accordance with the requirements of the Permit, and/or by not applying AKART to discharges from the facility. These requirements and Regional Disposal Co.'s violations thereof are described in detail in Section I.B and Section II of the Notice Letter, attached as Exhibit 1, and incorporated herein by this reference, with the exception of Section II, paragraphs 3, 5, and 9.

30.    Regional Disposal Co. has violated and continues to violate the monitoring requirements of Conditions S3.B.5, S4.B, S5, S7, and S9 of the Permit. Regional Disposal Co. has failed to sample its stormwater discharges once during every calendar quarter at each distinct point of discharge offsite except for substantially identical outfalls excluded by a sufficiently

COMPLAINT - 10

detailed analysis in the facility's SWPPP. Regional Disposal Co. does not sample its stormwater discharges from any location besides Outfall D01, such as locations where runoff discharges down facility driveways, discharges from the south corner of the facility, and discharges from rail lines used by the facility. Additionally, Regional Disposal Co. failed to sample its stormwater discharges at any point of discharge from the facility for the third quarter of 2021, third quarter of 2022, fourth quarter of 2023, and third quarter of 2025. Regional Disposal Co. has failed to comply with Condition S9.B of the Permit because it has not submitted a DMR within the time prescribed for any of its discharge points other than Outfall D01 in the last five years. Regional Disposal Co. has failed to comply with visual monitoring requirements required by Permit Condition S7 by failing to conduct Industrial Stormwater Monthly Inspections, failing to maintain the requisite inspection reports and checklists, and failing to make the requisite certifications and summaries by qualified personnel each and every month for the last five years. Regional Disposal Co.'s violations of the Permit's monitoring requirements are described in Section II.13 and Section III of the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference. These violations are reasonably likely to recur.

31.    Regional Disposal Co. triggered Level One Corrective Action requirements under the Permit for each benchmark exceedance identified in Table 1, above. Regional Disposal Co. has violated the requirements of Condition S8.B of the Permit by failing to conduct Level One Corrective Action requirements in accordance with the Permit's conditions, including the required inspection to investigate the cause; review, revision, and certification of the SWPPP; the required implementation of additional operational source control BMPs; and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, including the benchmark

COMPLAINT - 11

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

exceedances listed in Table 1, above. These Corrective Action requirements and Regional Disposal Co.'s violations thereof are described in Section IV.A of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

32.    Regional Disposal Co. triggered Level Two Corrective Action requirements for each benchmark exceedance identified in Table 1 above that occurred in any two quarters of a calendar year for the same pollutant parameter. Regional Disposal Co. has violated the requirements of Condition S8.C of the Permits by failing to conduct a Level Two Corrective Action in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required implementation of additional structural source control BMPs, and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, for any two quarters during a calendar year for the same pollutant parameter, including the benchmark exceedances listed in Table 1, above. These violations include but are not limited to Regional Disposal Co.'s failure to perform Level Two Corrective Action requirements for turbidity and zinc triggered by its stormwater sampling during calendar year 2020; for turbidity, copper, and zinc triggered by its stormwater sampling during calendar year 2022; for turbidity, copper and zinc triggered by its stormwater sampling during calendar year 2023; and for turbidity triggered by its stormwater sampling during calendar year 2024. Regional Disposal Co.'s stormwater sampling in calendar year 2025 also triggered a Level Two Corrective Action for turbidity, copper, and zinc. Although the deadline for implementing Level Two Corrective Actions for 2025 benchmark exceedances has not yet passed, on information and belief, Regional Disposal Co. will violate its Level Two Corrective Action requirements for these exceedances, as well.

COMPLAINT - 12

These corrective action requirements and Regional Disposal Co.'s violations thereof are described in Section IV.B of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

33.    Regional Disposal Co. triggered Level Three Corrective Action requirements for each benchmark exceedance identified in Table 1 above that occurred in any three quarters of a calendar year for the same pollutant parameter. Regional Disposal Co. has violated the requirements of Condition S8.D of the Permit by failing to conduct a Level Three Corrective Action in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required preparation and submission of an engineering report describing additional treatment BMPs, the required submission of an Operation and Maintenance Manual, the required implementation of additional treatment BMPs, and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, for any three quarters during a calendar year, including the benchmark exceedances listed in Table 1, above. These violations include Regional Disposal Co.'s failure to perform Level Three Corrective Action requirements for turbidity triggered by its stormwater sampling during calendar year 2022, and for turbidity triggered by its stormwater sampling during calendar year 2023. These corrective action requirements and Regional Disposal Co.'s violations thereof are described in Section IV.C of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

34.    Regional Disposal Co. has failed to comply with the requirement to submit an accurate and complete annual report to Ecology each year as required by Permit Condition S9.C. Regional Disposal Co. has failed to comply with the requirement to document its corrective

COMPLAINT - 13

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

actions as required by Permit Conditions S8.B-D. Regional Disposal Co. has violated these conditions because the annual reports submitted by Regional Disposal Co. for calendar years 2022, 2023, 2024, and 2025 do not include the required information, including as to corrective actions at the facility, such as adequate descriptions of corrective actions planned and taken and a precise date for implementation of corrective actions. These requirements and Regional Disposal Co.'s violations thereof are described in Section V of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

35.    Regional Disposal Co. has failed, and continues to fail, to comply with the recordkeeping requirements of Permit Condition S4.B.4. Regional Disposal Co. does not record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if Regional Disposal Co. collected the sample within the first twelve hours of a stormwater discharge event, an explanation of why Regional Disposal Co. could not collect a sample within the first twelve hours of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling, as required by the Permit Condition. These requirements and Regional Disposal Co.'s violations thereof are described in Section VI.A of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

36.    Regional Disposal Co. has violated the record keeping requirements of Permit Condition S9.D. Regional Disposal Co. does not retain for a minimum of five years a copy of the current Permit, a copy of Regional Disposal Co.'s coverage letter, records of all sampling information, all inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance

COMPLAINT - 14

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit, as required by the Permit Conditions. These requirements and Regional Disposal Co.'s violations thereof are described in Section VI.B of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

37.    Condition S9.F of the Permit requires Regional Disposal Co. to take certain actions, including reporting to Ecology and immediately taking actions, in the event Regional Disposal Co. is unable to comply with any terms and conditions of the Permit which may endanger human health or the environment. Regional Disposal Co. has violated these requirements of the Permit by failing to report and correct permit violations, including each and every time Regional Disposal Co. failed to comply with corrective action requirements as described above in paragraphs 31-33; and each and every time Regional Disposal Co. discharged stormwater with amounts of pollutants in excess of the Permit benchmarks as described in paragraph 26 and Table 1, above. These requirements and Regional Disposal Co.'s violations thereof are described in Section VII of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

38.    Condition S9.G of the Permit requires Regional Disposal Co. to provide access to, or a copy of, its SWPPP to members of the public upon written request. The Permit requires that the SWPPP be made available within 14 days of the request, unless a current version is maintained at a readily accessible URL, Regional Disposal Co. provides where the URL can be found in its ISGP application, and Regional Disposal Co. maintains its current SWPPP at the URL, including any SWPPP modifications, records, and other reporting elements required by the

COMPLAINT - 15

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

ISGP. Regional Disposal Co. failed to provide a copy of, or access to, its SWPPP within 14 days of Soundkeeper's written request for such copy or access, contained within the Notice Letter. These requirements and Regional Disposal Co.'s violations thereof are described in Section VIII of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

39.     A significant penalty should be imposed against Regional Disposal Co. under the penalty factors set forth in 33 U.S.C. § 1319(d).

40.     Regional Disposal Co.'s violations were avoidable had Regional Disposal Co. been diligent in overseeing facility operations and maintenance.

41.     Regional Disposal Co. benefited economically as a consequence of its violations and failure to implement improvements at the facility.

42.     Regional Disposal Co.'s violations caused and contributed to pollution in the water column and sediments of the receiving water, which may be ameliorated by an order from the Court requiring clean up or monitoring.

## VI.    CAUSE OF ACTION

43.     The preceding paragraphs and the allegations in the Notice Letter attached hereto as Exhibit 1 are incorporated herein.

44.     Regional Disposal Co.'s violations of its NPDES permit described herein and in the Notice Letter constitute violations of "effluent standard(s) or limitation(s)" as defined by Section 505 of the CWA, 33 U.S.C. § 1365.

45.     No agency has taken an enforcement action constituting diligent prosecution or otherwise precluding claims under 33 U.S.C. §§ 1319 or 1365(a).

COMPLAINT - 16

46.     Prior notice of violations and claims was provided to Regional Disposal Co. and others as required.

47.     These violations committed by Regional Disposal Co. are ongoing or are reasonably likely to reoccur. Any and all additional violations of the Permit and the CWA which occur after those described in Soundkeeper's Notice Letter, but before a final decision in this action, should be considered ongoing violations subject to this Complaint.

48.     Without the imposition of appropriate civil penalties and the issuance of an injunction, Regional Disposal Co. is likely to continue to violate the Permit and the CWA to the further injury of Soundkeeper, its members, and others.

## VII.    RELIEF REQUESTED

Wherefore, Soundkeeper respectfully requests that this Court grant the following relief:

A.     Issue a declaratory judgment that Regional Disposal Co. has violated and continues to be in violation of the Permit and the CWA;

B.     Enjoin Regional Disposal Co. from operating the facility in a manner that results in further violations of the Permit and the CWA;

C.     Order Regional Disposal Co. to immediately develop and implement a SWPPP that complies with the Permit at the facility;

D.     Order Regional Disposal Co. to allow Soundkeeper to participate in the development and implementation of Regional Disposal Co.'s SWPPP and compliance plan;

E.     Order Regional Disposal Co. to provide Soundkeeper, for a period beginning on the date of the Court's Order and running for three years after Regional Disposal Co. achieves compliance with all of the conditions of the Permit, with copies of all reports and other

COMPLAINT - 17

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

documents which Regional Disposal Co. submits to Ecology regarding Regional Disposal Co.'s coverage under the Permit at the facility at the time these documents are submitted;

F.      Order Regional Disposal Co. to take specific actions to remediate the environmental harm caused by its violations;

G.      Order Regional Disposal Co. to pay civil penalties of $68,445 per day of violation for each violation committed by Regional Disposal Co., pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19 and 19.4;

H.      Award Soundkeeper its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d), and any other applicable authorization; and

I.      Award such other relief as this Court deems appropriate.


RESPECTFULLY SUBMITTED this 5th day of August, 2026.


SMITH & LOWNEY, PLLC

By:      By: *s/Marc Zemel*
         Marc Zemel, WSBA No. 44325
         By: *s/Evelyn Mailander*
         Evelyn Mailander, WSBA No. 62827
         Attorneys for Plaintiff
         2317 E. John St.,
         Seattle, WA 98112
         Tel: (206) 860-2883
         Fax: (206) 860-4187
         E-mail: marc@smithandlowney.com,
         evelyn@smithandlowney.com

COMPLAINT - 18

# Exhibit 1

# SMITH & LOWNEY

## PLLC

### ATTORNEYS AT LAW

May 26, 2026

**Via Certified Mail - Return Receipt Requested**

Managing Agent
Republic Services, Inc.
PO Box 338
Roosevelt, WA 99356-0338

Managing Agent
Regional Disposal Co. / Everett Intermodal Facility
905 Riverside Rd.
Everett, WA 98201

Re:     **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND
        REQUEST FOR COPY OF STORMWATER POLLUTION PREVENTION PLAN**

Dear Managing Agent:

We represent Puget Soundkeeper Alliance ("Soundkeeper"), 130 Nickerson St. #107, Seattle, WA 98109, (206) 297-7002.  Any response or correspondence related to this matter should be directed to us at the letterhead address (Smith & Lowney, PLLC, 2317 E John St., Seattle, WA 98112). This letter is to provide you with sixty days' notice of Soundkeeper's intent to file a citizen suit against Republic Services, Inc. and/or Regional Disposal Company a/k/a Everett Intermodal Facility (collectively, "Republic Services") under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described below. This letter is also a request for a copy of the complete and current stormwater pollution prevention plan ("SWPPP") required by Republic Services' National Pollution Discharge Elimination System ("NPDES") permit.

Republic Services was granted coverage under Washington's Industrial Stormwater General Permit ("ISGP") issued by the Washington Department of Ecology ("Ecology") effective January 1, 2020 and expired on December 31, 2024 under NPDES No. WAR124604 (the "2020 Permit"). Ecology granted Republic Services coverage under the current iteration of the ISGP effective January 1, 2025, and set to expire on December 31, 2029 (the "2025 Permit") and maintains the same permit number, WAR124604.

Republic Services has violated and continues to violate effluent standards and limitations under the CWA (see 33 U.S.C. §§ 1365(f)) including the terms and conditions of the 2020



2317 East John Street, Seattle, Washington 98112
206-860-2883 | smithandlowney.com

Permit and the 2025 Permit (collectively, the "Permits") with respect to operations of, and discharges of stormwater and pollutants from, its facility located at or about 905 Riverside Rd., Everett, WA (the "facility") as described herein, to the Snohomish River and Puget Sound. The facility subject to this notice includes any contiguous or adjacent properties owned or operated by Republic Services.

## I.    COMPLIANCE WITH STANDARDS.

### A.    Violations of Water Quality Standards

Condition S10.A of the Permits prohibits discharges that cause or contribute to violations of water quality standards. Water quality standards are the foundation of the CWA and Washington's efforts to protect clean water. In particular, water quality standards represent the U.S. Environmental Protection Agency ("EPA") and Ecology's determination, based on scientific studies, of the thresholds at which pollution starts to cause significant adverse effects on fish or other beneficial uses. For each water body in Washington, Ecology designates the "beneficial uses" that must be protected through the adoption of water quality standards.

A discharger must comply with both narrative and numeric criteria water quality standards. WAC 173-201A-010; WAC 173-201A-510 ("No waste discharge permit can be issued that causes or contributes to a violation of water quality criteria, except as provided for in this chapter."). Narrative water quality standards provide legal mandates that supplement the numeric criteria. Furthermore, the narrative water quality standard applies with equal force even if Ecology has established a numeric water quality standard. Specifically, Condition S10.A of the Permits requires that Republic Services' discharges not cause or contribute to an excursion of Washington State water quality standards.

Republic Services discharges to the Snohomish River, which flows to the Puget Sound. Republic Services discharges stormwater that contains elevated levels of zinc, copper, and turbidity as indicated in Table 1. These discharges cause and/or contribute to violations of water quality standards for zinc, copper, and turbidity in the Snohomish River and Puget Sound and have occurred each and every day during the last five years on which there was 0.1 inch or more of precipitation and continue to occur. *See* WAC §§ 173-201A-200 (fresh water designated uses and criteria), (1)(a)-(b) (general criteria applicable to all aquatic life freshwater uses), 1(e) (turbidity), 2(a) (general recreational use freshwater criteria), 4(a)-(b) (general miscellaneous use criteria); § 173-201A-240 (toxic substances numeric criteria for copper and zinc); § 173-201A-260(2) (narrative toxics and aesthetics criteria); § 173-201A-600 (freshwater use designations).

**Table 1 – Monitoring Point D01 Benchmark Exceedances**

| Quarter in which sample collected | Turbidity (Benchmark 25 NTU) | Cu Concentration (Benchmark 14 ug/L) | Zn Concentration (Benchmark 117 ug/L) |
|---|---|---|---|
| 3rd Quarter 2020 | **556 NTU** | | **140 ug/L** |
| 4th Quarter 2020 | **343** | | **220** |

Notice of Intent to Sue - 2

| 2nd Quarter 2021 | 102.1 | | 130 |
|---|---|---|---|
| 1st Quarter  2022 | 202 | | |
| 2nd Quarter 2022 | 999 | 37 ug/L | 290 |
| 4th Quarter 2022 | 549 | 41 | 610 |
| 1st Quarter  2023 | 49.6 | | |
| 2nd Quarter 2023 | 999 | 36 | 460 |
| 3rd Quarter 2023 | 510 | 18 | 360 |
| 1st Quarter  2024 | 33.4 | | |
| 3rd Quarter 2024 | 95 | | |
| 1st Quarter 2025 | >999 | 39 | 230 |
| 4th Quarter 2025 | 598 | 50 | 370 |
| 1st Quarter 2026 | 188 | | |

### B.      Compliance With Standards

Condition S10.C of the Permits requires Republic Services to apply all known and reasonable methods of prevention, control, and treatment ("AKART") to all discharges, including preparation and implementation of an adequate Stormwater Pollution Prevention Plan ("SWPPP") and best management practices ("BMPs"). Republic Services has violated and continues to violate these conditions by failing to apply AKART to its discharges or to implement an adequate SWPPP and BMPs, as evidenced by the elevated levels of pollutants in its discharge indicated in Table 1 and as described below in this notice of intent to sue.

## II.      STORMWATER POLLUTION PREVENTION PLAN VIOLATIONS

Republic Services is in violation of the Permits' SWPPP provisions as follows:

1. Condition S3.A of the Permits requires Republic Services to develop and implement a SWPPP that is consistent with permit requirements, fully implemented as directed by permit conditions, and updated as necessary to maintain compliance with permit conditions. Republic Services has violated these requirements of the Permits each and every day during the last five years and continues to violate them because its SWPPP is not consistent with permit requirements, has not been fully implemented, and has not been updated as necessary.

2. The SWPPP fails to satisfy the requirements of Condition S3 of the Permits because it does not adequately describe BMPs. Condition S3.B.4 of the Permits requires that the SWPPP include a description of the BMPs that are necessary for the facility to eliminate or reduce the potential to contaminate stormwater. Condition S3.A.2 of the Permits requires that the SWPPP include BMPs consistent with the Stormwater Management Manual for Western Washington (SWMMWW), available at https://fortress.wa.gov/ecy/ezshare/wq/SWMMs/2024SWMMWW/2024_SWMMWW.htm or document how stormwater BMPs included in the SWPPP are demonstratively equivalent to the practices contained in the approved stormwater technical manuals, including the proper selection, implementation, and maintenance of all applicable and appropriate BMPs. Republic

Notice of Intent to Sue - 3

Services' SWPPP does not comply with these requirements because it does not adequately describe BMPs and does not include all BMPs consistent with approved stormwater technical manuals nor does it include BMPs that are demonstratively equivalent to such BMPs with documentation of BMP adequacy.

3. Republic Services' SWPPP fails to satisfy the requirements of Condition S3.B.2 of the Permits because it fails to include a facility assessment as mandated. The SWPPP fails to include an adequate facility assessment because it does not describe all the industrial activities conducted at the site, the general layout of the entire facility including buildings and storage of raw materials, the flow of goods and materials through the facility, regular business hours and seasonal variations in business hours or in industrial activities, as required.

4. Republic Services' SWPPP fails to satisfy the requirements of Condition S3.B.1 of the Permits because it does not include a site map that identifies all significant features, all the stormwater drainage and discharge structures, the contributing stormwater drainage areas for each stormwater discharge point off-site, a unique identifying number for each discharge point, each sampling location with a unique identifying number, paved areas and buildings, areas of pollutant contact associated with specific industrial activities, all areas where industrial activity is conducted, conditionally approved non-stormwater discharges, surface water locations, areas of existing and potential soil erosion, vehicle maintenance areas and areas where equipment cleaning is conducted, locations where vehicles are parked or stored, and lands and waters adjacent to the site that may be helpful in identifying discharge points or drainage routes.

5. Republic Services' SWPPP fails to comply with Condition S3.B.2.b of the Permits because it does not include an inventory of industrial activities that identifies all areas associated with industrial activities that have been or may potentially be sources of pollutants as required. The SWPPP does not identify all areas associated with loading and unloading of material handled at the facility, outdoor storage of materials, products, or equipment, outdoor manufacturing and processing, onsite dust or particulate generating processes, on-site waste treatment, storage, or disposal, vehicle and equipment fueling, maintenance, and/or cleaning, roofs or other surfaces exposed to air emissions from a manufacturing building or a process area, and roofs or other surfaces composed of materials that may be mobilized by stormwater as required by these conditions.

6. Republic Services' SWPPP does not comply with Condition S3.B.2.c of the Permits because it does not include an adequate inventory of materials. The SWPPP does not include an inventory of materials that lists the types of materials handled at the site that potentially may be exposed to precipitation or runoff and that could result in stormwater pollution, a short narrative for material describing the potential for the pollutants to be present in stormwater discharge that is updated when data becomes available to verify the presence or absence of the pollutants, a narrative description of any potential sources of pollutants from past activities, materials, and spills that were previously handled, treated, stored, or disposed of in a manner to allow ongoing exposure to stormwater as required. The SWPPP does not include the method and location of on-site storage or disposal of such materials and a list of significant spills and significant leaks of toxic or hazardous pollutants as these permit conditions require.

Notice of Intent to Sue - 4

7. Condition S3.B.4 of the Permits requires that permittees include in their SWPPPs and implement certain mandatory BMPs unless site conditions render the BMP unnecessary or infeasible, and an alternative and demonstrably equivalent BMP is provided. Republic Services is in violation of this requirement because it has failed to include in its SWPPP and implement the mandatory BMPs of the Permits.

8. Republic Services' SWPPP does not comply with Condition S3.B.4.b.i of the Permits because it does not include required operational source control BMPs in the following categories: good housekeeping (including definition of ongoing maintenance and cleanup of areas that may contribute pollutants to stormwater discharges, and a schedule/frequency for each housekeeping task); preventive maintenance (including BMPs to inspect and maintain stormwater drainage, source controls, treatment systems, and plant equipment and systems, and the schedule/frequency for each task as well as a maintenance log for completing each task); spill prevention and emergency cleanup plan (including BMPs to prevent spills that can contaminate stormwater, for material handling procedures, storage requirements, cleanup equipment and procedures, and spill logs); employee and contractor/vendor training (including an overview of what is in the SWPPP, who is responsible for maintaining the SWPPP, and its location onsite, how employees make a difference in complying with the SWPPP and their role in ensuring proper maintenance of BMPs, spill response procedures, good housekeeping, maintenance requirements, and material management practices, how training will be conducted, the frequency/schedule of training, a log of the dates on which specific employees received training, and a report of all electronically performed trainings, as applicable); inspections and recordkeeping (including documentation of procedures to ensure compliance with permit requirements for inspections and recordkeeping, identification of personnel who conduct inspections, provision of a visual inspection report or checklist, provision of a tracking or follow-up procedure to ensure that a report is prepared and appropriate action taken in response to visual monitoring, definition of how Republic Services will comply with signature and record retention requirements, certification of compliance with the SWPPP and Permit, and all completed inspection reports).

9. Republic Services' SWPPP does not comply with Condition S3.B.4.b.i.7 of the Permits because it does not include measures to identify and eliminate the discharge of process wastewater, domestic wastewater, noncontact cooling water, and other illicit discharges to stormwater sewers, or to surface waters and ground waters of the state.

10. Republic Services' SWPPP does not comply with Condition S3.B.4.b.ii of the Permits because it does not include required structural source control BMPs to minimize the exposure of manufacturing, processing, and material storage areas to rain, snow, snowmelt, and runoff.

11. Republic Services' SWPPP does not comply with Condition S3.B.4.b.iii of the Permits because it does not include treatment BMPs as required.

12.  Republic Services' SWPPP fails to comply with Condition S3.B.4.b.v of the Permits because it does not include BMPs to prevent the erosion of soils or other earthen materials and prevent off-site sedimentation and violations of water quality standards.

13.  Republic Services' SWPPP fails to satisfy the requirements of Condition S3.B.5 of the Permits because it fails to include a stormwater sampling plan as required.  The SWPPP does not include a sampling plan that: identifies all points of discharge to surface waters, stormwater drainage systems, or discrete groundwater infiltration locations; documents why each discharge point is not sampled; identifies each sampling point by its unique identifying number; specifies procedures for sampling collection and handling; specifies procedures for sending samples to the a laboratory; identifies parameters for analysis, holding times and preservatives, laboratory quantitation levels, and analytical methods, and that specifies the procedure for submitting the results to Ecology.

## III.　　MONITORING AND REPORTING VIOLATIONS

### A.　　Failure to Collect Quarterly Samples

Condition S4.B of the Permits requires Republic Services to collect a sample of its stormwater discharge once during every calendar quarter from each designated sampling location. Conditions S4.B.3.a of the 2020 Permit and S4.B.3 of the 2025 Permit require Republic Services to collect stormwater samples at each distinct point of discharge offsite except for substantially identical outfalls, in which case only one of the substantially identical outfalls must be sampled.  These conditions set forth sample collection criteria but require the collection of a sample even if the criteria cannot be met. The facility has at least five distinct points of discharge off-site: Outfall D01, as well as two locations where runoff discharges down driveways, runoff from the south corner of the facility, and discharges from rail lines used by the facility.

Republic Services violated these requirements by failing to collect stormwater samples at any of its discharge points during the third quarter of 2021, third quarter of 2022, fourth quarter of 2023, and third quarter of 2025.

Republic Services has also violated and continues to violate these conditions because it does not sample each distinct point of discharge off-site, including where runoff discharges down the driveways, runoff from the south corner of the facility, and discharges from rail lines at the facility. These violations have occurred and continue to occur each and every quarter during the last five years that Republic Services was and is required to sample its stormwater discharges, including the quarters in which it collected stormwater discharge samples from some, but not each, point of discharge. These violations will continue until Republic Services commences monitoring all distinct points of discharge.

### B.　　Failure to Timely Submit Discharge Monitoring Reports

Condition S9.B of the Permits require Republic Services to use DMR forms provided or approved by Ecology to summarize, report, and submit monitoring data to Ecology. For each monitoring period (calendar quarter) a DMR must be completed and submitted to Ecology not

later than 45 days after the end of the monitoring period. Republic Services has violated these conditions by failing to submit a DMR within the time prescribed for any of its discharge points other than D01 in the last five years.

### C.        Failure to Comply with Visual Monitoring Requirements

Conditions S7.A and B of the Permits require that monthly visual inspections be conducted at the facility by qualified personnel.  Each inspection is to include observations made at stormwater sampling locations and areas where stormwater associated with industrial activity is discharged, observations for the presence of floating materials, visible oil sheen, discoloration, turbidity, odor, etc. in the stormwater discharges, observations for the presence of illicit discharges or illicit connections, a verification that the descriptions of potential pollutant sources required by the permit are accurate, a verification that the site map in the SWPPP reflects current conditions, and an assessment of all BMPs that have been implemented (noting the effectiveness of the BMPs inspected, the locations of BMPs that need maintenance, the reason maintenance is needed and a schedule for maintenance, and locations where additional or different BMPs are needed). Once annually, dumpsters must be inspected for holes or defects.

Condition S7.C of the Permits requires that Republic Services record the results of each inspection in an inspection report or checklist that is maintained on-site and that documents the observations, verifications, and assessments required. The report/checklist must include the time and date of the inspection, the locations inspected, a statement that, in the judgment of the person conducting the inspection and the responsible corporate officer, the facility is either in compliance or out of compliance with the SWPPP and the Permits, a summary report and schedule of implementation of the remedial actions that Republic Services plans to take if the site inspection indicates that the facility is out of compliance, the name, title, signature and certification of the person conducting the facility inspection, and a certification and signature of the responsible corporate officer or a duly authorized representative.

Republic Services is in violation of these requirements of Condition S7 of the Permits because, during the last five years, it has failed to conduct each of the requisite visual monitoring and inspections, failed to prepare and maintain the requisite inspection reports or checklists, and failed to make the requisite certifications and summaries.

## IV.     CORRECTIVE ACTION VIOLATIONS

### A.        Violations of the Level One Requirements

Condition S8.B of the Permits requires Republic Services take specified actions, called a "Level One Corrective Action," each time quarterly stormwater sample results exceed a benchmark value or are outside the benchmark range for pH.

As described by Condition S8.B of the Permits, a Level One Corrective Action requires Republic Services to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits and contains the correct BMPs from the applicable Stormwater Management Manual; (2) make appropriate revisions to the SWPPP to include additional

operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.5 of the Permits; and (3) summarize the Level One Corrective Action in the Annual Report required under Condition S9.C of the Permits. Condition S8.B.3 of the 2020 Permit and S8.B.2 of the 2025 Permit requires Republic Services to implement the revised SWPPP as soon as possible, and no later than the DMR due date for the quarter the benchmark was exceeded.

Condition S5.A and Table 2 of the Permits establishes the following benchmarks: turbidity 25 NTU; pH 5 – 9 SU; total copper 14 µg/L; and total zinc 117 µg/L. Condition S5.B and Table 3 of the Permits establishes the following additional benchmarks and reporting requirements for NAICS codes 485111 and 562111 that are applicable to Republic Services: petroleum hydrocarbons (diesel-range organics and heavy oils) benchmark of 10 mg/L, PFOA, PFOS, PFHxS, PFNA, HFPO-DA, PFBS, and 6PPD-quinone.

Republic Services has violated the requirements of the Permits described above by failing to conduct a Level One Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, and the required summarization in the annual report each time in the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH, including the benchmark excursions listed in Table 1 above.

### B.    Violations of the Level Two Requirements

Condition S8.C of the Permits requires Republic Services take specified actions, called a "Level Two Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any two quarters during a calendar year.

As described by Condition S8.C of the Permits, a Level Two Corrective Action requires Republic Services to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional structural source control BMPs in all areas/discharge points that exceeded the benchmark parameter with the goal of achieving the applicable benchmark value(s) in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.5 of the Permits; and (3) summarize the Level Two Corrective Action (planned or taken) in the Annual Report required under Condition S9.C of the Permits. Condition S8.C.4 of the Permits requires Republic Services implement the revised SWPPP according to Condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later August 31st of the following year.

The Permits establish the benchmarks applicable to Republic Services described in section IV.A of this notice of intent to sue letter.

Republic Services has violated the requirements of the Permits described above by failing to conduct a Level Two Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of

Notice of Intent to Sue - 8

additional BMPs, including additional structural source control BMPs, and the required summarization in the annual report each time in the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any two quarters during a calendar year. As indicated in Table 1 above, these violations include, but are not limited to, Republic Services' failure to fulfill these obligations for turbidity and zinc triggered by its stormwater sampling during calendar year 2020, for turbidity, copper, and zinc triggered by its stormwater sampling during calendar year 2022, for turbidity, copper and zinc triggered by its stormwater sampling during calendar year 2023, and for turbidity triggered by its stormwater sampling during calendar year 2024. In addition, the facility's stormwater sampling during calendar year 2025 triggered Level Two Corrective Actions again for turbidity, copper, and zinc, and Soundkeeper intends to sue for facility violations of those requirements to the extent they are not complied with by the applicable deadline.

## C.      Violations of the Level Three Requirements

Condition S8.D of the Permits requires Republic Services take specified actions, called a "Level Three Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any three quarters during a calendar year.

As described by Condition S8.D of the Permits, a Level Three Corrective Action requires Republic Services to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional treatment BMPs in all areas/discharge points that exceeded the benchmark parameter with the goal of achieving the applicable benchmark value(s) in future discharges and additional operational and/or structural source control BMPs if necessary for proper function and maintenance of treatment BMPs, and sign and certify the revised SWPPP in accordance with Condition S3.A.5 of the Permits; and (3) summarize the Level Three Corrective Action (planned or taken) in the Annual Report required under Condition S9.C of the Permits, including information on how monitoring, assessment, or evaluation information was (or will be) used to determine whether existing treatment BMPs will be modified/enhanced, or it new/additional treatment BMPs will be installed. Condition S8.D.2 of the Permits requires that a licensed professional engineer, geologist, hydrogeologist, of certified professional in stormwater quality must review, sign, and certify the portion of the SWPPP that addresses stormwater treatment structures or processes. *See* Permit Appendix 2 (defining "qualified industrial stormwater professional").

Condition S8.D.3 of the Permits requires that, before installing BMPs that require the site-specific design or sizing of structures, equipment, or processes to collect, convey, treat, reclaim, or dispose of industrial stormwater, Republic Services submit an engineering report, plans, and specifications, and an operations and maintenance manual to Ecology for review in accordance with chapter 173-204 of the Washington Administrative Code. The engineering report must be submitted no later than six months after the last day of the calendar year in which the Level 3 was triggered (2025 Permit) or by the May 15th prior to the Level 3 deadline (2020 Permit). The plans and specifications and the operations and maintenance manual must be submitted to Ecology no later than 30 days after construction/installation is complete.

Condition S8.D.5 of the Permits requires Republic Services fully implement the revised SWPPP according to condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than September 30th of the following year.

The Permits establish the benchmarks applicable to Republic Services described in section IV.A of this notice of intent to sue letter.

Republic Services has violated the requirements of the Permits described above by failing to conduct a Level Three Corrective Action in accordance with permit conditions, including: the required review, revision and certification of the SWPPP; the requirement to have a specified professional sign and certify the portion of the SWPPP pertaining to treatment; the required implementation of additional BMPs, including additional treatment BMPs; the required submission of an engineering report, plans, specifications, and an operations and maintenance plan; and the required summarization in the annual report each time in the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any three quarters during a calendar year. As indicated in Table 1 above, these violations include, but are not limited to, Republic Services' failure to fulfill these obligations for turbidity triggered by its stormwater sampling during calendar year 2022, and again in 2023.

## V.    VIOLATIONS OF THE ANNUAL REPORT REQUIREMENTS

Condition S9.C of the Permits require Republic Services to submit an accurate and complete annual report to Ecology no later than May 15 of each year. The annual report must include corrective action documentation as required in Condition S8.B – D of the Permits.  If a corrective action is not yet completed at the time of submission of the annual report, Republic Services must describe the status of any outstanding corrective action. Specific information to be included in the annual report is identification of the conditions triggering the need for corrective action, description of the problem and identification of dates discovered, summary of any Level One, Two, or Three corrective actions completed during the previous calendar year, including the dates corrective actions were completed, and description of the status of any Level Two or Three corrective actions triggered during the previous calendar year, including identification of the date Republic Services expects to complete corrective actions.

Republic Services has violated this condition. The annual reports submitted by Republic Services for 2022 (in 2023), 2023 (in 2024), 2024 (in 2025), and 2025 (in 2026) do not include the required information or all of the stormwater problems identified. Specifically, the reports do not adequately describe the additional operational source control, structural source control, and treatment BMPs being implemented for Level One, Two, and Three corrective actions or the precise date for their installation, or corrective actions to prevent the recurrence of problems documented repeatedly.

## VI.    VIOLATIONS OF THE RECORDKEEPING REQUIREMENTS

### A.    Failure to Record Information

Condition S4.B.4 of the Permits requires Republic Services record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if Republic Services collected the sample within the first 12 hours of stormwater discharge event, an explanation of why Republic Services could not collect a sample within the first 12 hours of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling. Republic Services is in violation of these conditions as it has not recorded each of these specified items for each sample taken during the last five years.

### B.      Failure to Retain Records

Condition S9.D of the Permits requires Republic Services to retain for a minimum of five years a copy of the current Permit, a copy of Republic Services' coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit. Republic Services is in violation of these conditions because it has failed to retain records of such information, reports, and other documentation during the last five years.

## VII.    FAILURE TO REPORT PERMIT VIOLATIONS

Condition S9.F of the Permits requires Republic Services to take certain actions in the event Republic Services is unable to comply with any of the terms and conditions of the Permits which may endanger human health or the environment, or exceed any numeric effluent limitation in the permit. In such circumstances, Republic Services must immediately take action to minimize potential pollution or otherwise stop the noncompliance and correct the problem, and Republic Services must immediately notify the appropriate Ecology regional office of the failure to comply. Republic Services must then submit a detailed written report to Ecology, including specified details, within 5 days of the time Republic Services became aware of the circumstances, unless Ecology requests an earlier submission.

Republic Services routinely violates these requirements, including each and every time Republic Services failed to comply with the corrective action requirements described in section IV of this notice of intent to sue; and each and every time Republic Services discharged stormwater with concentrations of pollutants in excess of the Permit benchmarks, as described in Table 1, above. All these violations may endanger human health or the environment.

## VIII.   REQUEST FOR SWPPP

Pursuant to Condition S9.G of the Permits, Soundkeeper hereby requests that Republic Services provide a copy of, or access to, its SWPPP complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs. The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Notice of Intent to Sue - 11

Should Republic Services fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.G of the Permits, it will be in violation of that condition, which violation shall also be subject to this notice of intent to sue and any ensuing lawsuit.

## IX.    CONCLUSION

The above-described violations reflect those indicated by the information currently available to Soundkeeper. These violations are ongoing. Soundkeeper intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $68,445 per violation per day. *See* 40 C.F.R. § 19.4. In addition to civil penalties, Soundkeeper will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law. Further, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Soundkeeper believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against Republic Services, Inc. and Regional Disposal Company under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms. If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed promptly. We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Sincerely,

SMITH & LOWNEY, PLLC

By:    */s/ Evelyn Mailander*
Evelyn Mailander
Marc Zemel

cc:    Lee Zeldin, Administrator, U.S. EPA
Emma Pokon, Region 10 Administrator, U.S. EPA
Casey Sixkiller, Director, Washington Department of Ecology
Republic Services, Inc., Principal Executive Office (5353 East City North Drive, Phoenix, Arizona 85054)

Notice of Intent to Sue - 12

CT Corporation System, Registered Agent (711 Capitol Way S, Suite 204, Olympia, WA 98501)